U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2020 OCT 27  AM 10: 48

CLERK

BY _____ UAw _____
DEPUTY CLERK

KASEY DEGREENIA- HARRIS,      )
                             )
            Plaintiff,        )
                             )
      v.                      )       Case No. 2:19-cv-00218
                             )
LIFE INSURANCE COMPANY,       )
OF NORTH AMERICA,             )
                             )
            Defendant.        )
                             )

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO
SUPPLEMENT THE RECORD**
(Doc. 17)

Plaintiff Kasey DeGreenia-Harris brings this action pursuant to 29 U.S.C.

§ 1132(a)(1)(B) against Defendant Life Insurance Company of North America to recover

benefits under a group life insurance policy (the "Policy") subject to the Employee

Retirement Income Security Act of 1974 ("ERISA"). Pending before the court is

Plaintiff's motion to supplement the record to include investigation records generated by

the Vermont Occupational Safety and Health Administration ("VOSHA").

Plaintiff is represented by Michael F. Hanley, Esq. and Paul J. Perkins, Esq.

Defendant is represented by Brooks R. Magratten, Esq. and Evan J. O'Brien, Esq.

**I.      Factual and Procedural Background.**

This claim arises from the denial of benefits under the Policy provided by

Defendant. Defendant is a wholly-owned subsidiary of Cigna Holdings, Inc., which is a

wholly-owned subsidiary of Cigna Holding Company, which is a wholly-owned

subsidiary of Cigna Corporation ("Cigna"). Defendant sold a group life and accidental

death insurance policy to Denny DeGreenia's ("Mr. DeGreenia") employer, and Mr.

DeGreenia purchased additional coverage under the Policy. On December 17, 2017, Mr.

DeGreenia died at the Burke Mountain Ski Resort when the snowcat vehicle he was

driving rolled over. Plaintiff, Mr. DeGreenia's daughter, and Anna DeGreenia, Mr. DeGreenia's wife, are beneficiaries under the Policy.

On December 27, 2017, Plaintiff and Anna DeGreenia submitted proof of loss to Cigna. Cigna reviewed the claim for life insurance benefits and paid Anna DeGreenia $40,000. The Plan Administrator administering the Policy denied Plaintiff's claim for accidental death benefits on the ground that an autopsy showed Mr. DeGreenia had intoxicants in his system and his death was "the foreseeable result of his voluntary conduct, and no Covered Accident, as defined by the [P]olicy[.]" (Doc. 17-1 at 2.) Plaintiff appealed this decision, and the Plan Administrator again denied Plaintiff's claim, relying on the same rationale as the initial denial.

Plaintiff represents that VOSHA commenced an investigation into Mr. DeGreenia's death the day after he died. In the course of its investigation, VOSHA interviewed managers at the ski area and Mr. DeGreenia's co-workers and viewed and photographed the scene and the snowcat he was driving. The investigation was completed on March 28, 2018, and VOSHA concluded that Mr. DeGreenia died when the snowcat lost traction on a steep incline and rolled over because a mechanic failed to put traction devices, called "ice caulks," on one of the vehicle's two continuous tracks and the driver's seatbelt was not functional. (Doc. 17-1 at 5.) VOSHA concluded that "this incident could have and should have been avoided, had the employer taken proper actions prior to the incident[,]" *id.*, and issued fines to the employer for three violations. According to Plaintiff, Mr. DeGreenia's employer paid VOSHA $38,263.

Plaintiff filed her Complaint against Defendant on November 25, 2019 and amended her Complaint on April 22, 2020. Defendant filed an answer on April 27, 2020. Plaintiff brings an ERISA claim pursuant to 29 U.S.C. § 1132(a)(1)(B). In her Amended Complaint, she asks the court to conduct a *de novo* review of the Defendant's denial of benefits and to interpret the word "accident" in her favor awarding her benefits, interest, and attorney's fees.

2

On April 21, 2020, Plaintiff moved to supplement the record to add VOSHA investigation records, which consist of 897 pages. Defendant opposed this motion on May 5, 2020, and Plaintiff replied on May 13, 2020.

## II. Conclusions of Law and Analysis.

### A. Whether the *De Novo* or Arbitrary and Capricious Standard of Review Applies.

"[A] denial of benefits challenged under § 1132(a)(1)(B) must be reviewed under a de novo standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, in which cases a deferential standard of review is appropriate." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 102 (1989). Plaintiff contends that the court must review her denial of benefits claim *de novo* because any discretion given to Defendant in interpreting the terms of the Policy is "null and void" under Vermont law. (Doc. 17-1 at 4.) Defendant counters that the arbitrary and capricious standard applies because the Plan Administrator had discretion to interpret the Policy pursuant to the Appointment of Claim Fiduciary form (the "Fiduciary Form") which states: "Claim Fiduciary shall have the authority, in its discretion, to interpret the terms of the Plan, including the Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact." (Doc. 17-3 at 2.) "[U]nder the arbitrary and capricious standard[,] [review] is limited to the administrative record." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d. Cir. 1995).

> Under Vermont law:
>
> No policy, contract, certificate, or agreement of life insurance offered or issued in this State may contain a provision purporting to reserve discretion to the insurer to interpret the terms of the contract or to provide standards of interpretation or review that are inconsistent with the laws of this State, and on and after July 1, 2012, any such provision in a policy, contract, certificate, or agreement shall be null and void.

8 V.S.A. § 4062f(e).

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" 29 U.S.C. § 1144(a). However, ERISA also contains

3

a savings clause exempting state insurance laws from preemption. 29 U.S.C.
§ 1144(b)(2)(A) ("nothing in this subchapter shall be construed to exempt or relieve any
person from any law of any State which regulates insurance").

Defendant argues that Vermont law does not govern the Fiduciary Form because it
is not a "policy, contract, certificate, or agreement of life insurance offered or issued"
subject to 8 V.S.A. § 4062f(e). (Doc. 23 at 3, n.3) (internal quotation marks omitted).
Defendant nonetheless asks the court to find that the Fiduciary Form modifies the Policy
by endowing the decision-maker with discretion to interpret the Policy terms and to
determine benefits eligibility. Plaintiff asserts that the Fiduciary Form was never adopted
because the "Name of Plan" and "Plan Number" on that form were left blank and the
form was never delivered to Mr. DeGreenia. In response, Defendant states that the
Fiduciary Form references the "group Accidental Death policy involved in this action[.]"
(Doc. 23 at 3.)

To affect or modify the Policy, the Fiduciary Form must have become part of it.
*Cf. Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 2004 VT 93, ¶ 18, 177 Vt. 215, 223, 862
A.2d 251, 258 (2004) ("An endorsement is a writing added or attached to a policy which
either expands or restricts the insurance in the policy. It becomes a part of the contract
when it is issued[.]") (internal quotation marks and citation omitted)). In this case, to the
extent Defendant relies on the Fiduciary Form to modify the Policy, it must demonstrate
that it complies with Vermont law. The Fiduciary Form purports to endow the Claim
Fiduciary with the discretion to interpret the Policy without requiring that interpretation
to be consistent with Vermont law. For this reason, the discretionary clause is void and
the *de novo* standard of review applies because no other provision of the Policy is cited
by Defendant as according it "discretionary authority to determine eligibility for benefits
or to construe the plan's terms[.]" *Bruch*, 489 U.S. at 102; *see also Orzechowski v.
Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*, 856 F.3d 686, 695 (9th
Cir. 2017) (observing that "the district court should have voided the discretionary clauses
[under California law] and reviewed [plaintiff's] claim de novo"). The Supreme Court
has held that a denial of benefits challenge "must be reviewed under a *de novo* standard

4

unless the *benefit plan* expressly gives the plan administrator or fiduciary discretion[]."
*See Bruch*, 489 U.S. at 102 (emphasis supplied). In this case, the Policy itself does not
provide this discretion.

**B.    Whether the VOSHA Records Are Relevant to Plaintiff's ERISA
Claim.**

Defendant asserts that the court should not consider the VOSHA records because
they are not relevant to the court's review of the denial of benefits claim under ERISA.
Defendant cites several cases for the proposition that a "third-party's determination as to
whether a death is accidental has little bearing on the determination of an ERISA claim
administrator who is bound by the terms of the particular plan." *See* Doc. 23 at 7; *Schmidt
v. Metro. Life Ins. Co.*, 2009 WL 2982918, at *6 (W.D. Mo. Sept. 14, 2009) ("[T]he
Court will not presume that the decedent's manner of death was an accident just because
of the finding on the medical examiner's report."); *Murdock v. Metro. Life Ins. Co.*, 2007
WL 6097205, at *7 (N.D. Ohio Dec. 31, 2007) ("The one-word description of . . . [the]
death [by the coroner] as 'accidental' sheds no light on whether or not, as a matter of fact,
the accident in this case—the fall—was the sole cause of death, as required by the
Plan."); *Mullaney v. Aetna U.S. Healthcare*, 103 F. Supp. 2d 486, 491 (D.R.I. 2000)
("[T]he medical examiner[']s determination of 'accident' does not mean that Mr.
Mullaney's 'accident' was of the sort contemplated by defendant or described in the
Plan."). These cases support a conclusion that the VOSHA records are not dispositive on
the issue of whether there has been an "accident" under the Policy, however, they do not
stand for the proposition that they are *per se* irrelevant.

Plaintiff argues that the VOSHA records are relevant because VOSHA concluded
there was a defect in the vehicle Mr. DeGreenia was driving at the time of his death, a
conclusion that conflicts with the Plan Administrator's conclusion that "[t]here were no
defects noted on the vehicle that would have contributed to the crash." (Doc. 17-1 at 10)
(alteration in original). Although the VOSHA records may not control whether there was
an "accident" as defined by the Policy, they are at least relevant to that determination as
they shed light on the critical issue of causation.

5

### C.     Whether Plaintiff Has Demonstrated "Good Cause" to Supplement the Record.

Plaintiff argues that "good cause" exists to supplement the administrative record because Defendant's claim decision was tainted by a conflict of interest. She contends that Cigna owned the company that issued the Policy and that both the person who conducted the initial review of her claim and the person who reviewed denial of benefits were Cigna employees. Plaintiff asserts that "[a]ny reasonable fiduciary, free from bias, would have reviewed the VOSHA file." (Doc. 17-1 at 9.)

Defendant counters that a financial conflict does not automatically constitute "good cause" for supplementing the administrative record and that, even when a plaintiff shows "good cause," supplementation of the record is discretionary. It notes that Plaintiff had ample time to add the VOSHA records to her claim and instead seeks to introduce them more than a year after the denial of benefits.

Review of a denial of benefits, under the *de novo* standard, "is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." *DeFelice v. Am. Int'l Life Assur. Co. of New York*, 112 F.3d 61, 67 (2d Cir. 1997). "A demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' warranting the introduction of additional evidence." *DeFelice,* 112 F. 3d at 67. A "substantial potential for conflict . . . exist[s] where a plan administrator or fiduciary serves the dual roles of a decision-maker with regard to the granting or denial of claims and an insurer which must constantly strive to make its revenues exceed its costs." *Velez v. Prudential Health Care Plan of N.Y., Inc.,* 943 F. Supp. 332, 339 (S.D.N.Y. 1996) (internal quotation marks omitted); *see Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 112 (2008) (A plan administrator is considered conflicted when that administrator "both evaluates claims for benefits and pays benefits claims[.]")). The Second Circuit has cautioned that a "conflicted administrator does not per se constitute good cause[.]" *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 296 (2d Cir. 2004) (finding "good cause . . . bolstered in part by the finding that there were insufficient procedures for internal or appellate review"). However, courts have found it

"can rise to the level of 'good cause' when bolstered by specific allegations." *Durham v. Prudential Ins. Co. of Am.*, 890 F. Supp. 2d 390, 396 (quoting *Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 831 F. Supp. 2d 651, 658 (S.D.N.Y. 2011)).

The Second Circuit has observed that:

> The policy [against district courts serving as substitute plan administrators] . . . is inappropriate where such a blatant conflict exists at the administrative level. In such circumstances, courts must exercise fully their power to review de novo and to be substitute administrators. Plaintiffs are utterly helpless against the whim of the conflicted body's interpretation of the facts. The normal scope of limited "*de novo*" review is inappropriate where the fairness of the ERISA appeals process cannot be established using only the record before the administrator.

*DeFelice*, 112 F.3d at 66.

In the instant case, a Vermont State Police report related to the incident cites an ongoing VOSHA investigation, thereby placing Defendant on notice regarding the VOSHA records. In turn, Defendant had "an independent duty to ensure that the record before it was sufficient for a fair and accurate claims determination." *Galuszka v. Reliance Standard Life Ins. Co.*, 2017 WL 78889, at *4 (D. Vt. Jan. 9, 2017) (citing *Glenn*, 554 U.S. at 116 (noting the claim administrator's independent burden to ensure accurate claims assessment and declining "to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review") (internal quotation marks omitted)). "ERISA and its accompanying regulations 'were intended to help claimants process their claims efficiently and fairly; they were not intended to be used . . . as a smoke screen to shield [insurers] from legitimate claims.'" *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 696 (7th Cir. 1992) (citations omitted). For this reason, ERISA and its implementing regulations require "a meaningful dialogue between ERISA plan administrators and their beneficiaries[,]" *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997), which extends to ensuring the record before the decision-maker is complete.

## CONCLUSION

Plaintiff has satisfied the "good cause" standard by her particularized allegations regarding a conflict of interest coupled with VOSHA records that could have been made part of the record by either party and which are relevant to the issue of causation. The court therefore GRANTS Plaintiff's motion to supplement the record. (Doc. 17.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 27th day of October, 2020.

Christina Reiss, District Judge
United States District Court

8