UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 DEC 17 PM 2: 05

CLERK

BY_____ *htw*
DEPUTY CLERK

KASEY DEGREENIA-HARRIS,          )
                                 )
        Plaintiff,               )
                                 )
        v.                       )          Case No. 2:19-cv-00218
                                 )
LIFE INSURANCE COMPANY           )
OF NORTH AMERICA,                )
                                 )
        Defendant.               )

**OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR**
**ATTORNEY'S FEES AND COSTS AND DENYING PLAINTIFF'S MOTION**
**FOR INTEREST**
(Docs. 71, 72, & 73)

Plaintiff Kasey DeGreenia-Harris brings this action pursuant to 29 U.S.C.

§ 1132(a)(1)(B) against Defendant Life Insurance Company of North America

("Defendant" or "LINA") to recover benefits under a group life insurance policy subject

to the Employee Retirement Income Security Act of 1974 ("ERISA"). Pending before the

court are Plaintiff's motions for attorney's fees (Doc. 71), interest (Doc. 72), and costs

(Doc. 73).

Plaintiff is represented by Michael F. Hanley, Esq. and Paul J. Perkins, Esq.

Defendant is represented by Brooks R. Magratten, Esq. and Evan J. O'Brien, Esq.

**I.     Factual and Procedural Background.**

The court hereby adopts the facts set forth in *DeGreenia-Harris v. Life Ins. Co. of*

*N. Am.*, 2021 WL 1165502 (D. Vt. Mar. 26, 2021). To the extent they are relevant, a

portion of those facts is set forth herein.

Denny DeGreenia died on December 17, 2017 at the Burke Mountain ski resort in

East Burke, Vermont when the snowcat vehicle he was driving rolled over. Mr.

DeGreenia was a longtime employee of Burke Mountain Operating Company ("Burke

Mountain"). During his employment at Burke Mountain, Mr. DeGreenia participated in an employee welfare benefit plan sponsored by Jay Peak, Inc. (the "Plan"). The Plan provided life and accidental death insurance benefits pursuant to a group insurance policy issued to Jay Peak, Inc. by LINA, which at all relevant times served as both claim administrator and insurer for the Plan.

The Plan provided basic accidental death coverage of $40,000, and Mr. DeGreenia elected $300,000 in additional coverage for a total of $340,000 in accidental death coverage. Plaintiff is Mr. DeGreenia's daughter and was designated as the beneficiary for all accidental death benefits payable under the Plan.

LINA denied Plaintiff's claim for accidental death benefits under the Plan and upheld its initial decision after Plaintiff appealed. LINA offered Plaintiff an opportunity to supplement the record. She did not do so, nor did she seek an expert toxicologist or other expert to rebut the two toxicologists retained by LINA. At the time, the only document Plaintiff relied upon was her former attorney's letter.[1]

Plaintiff filed her Complaint against Defendant in this court on November 25, 2019, and amended her Complaint on April 22, 2020, alleging a single claim under 29 U.S.C. § 1132(a)(1)(B) for improper denial of benefits. On April 21, 2020, approximately five months after the action was filed, Plaintiff moved to supplement the administrative record with Vermont Occupational Safety and Health Administration ("VOSHA") records from the incident resulting in Mr. DeGreenia's death. These records revealed a VOSHA investigator's conclusion that the incident could and should have been avoided had Burke Mountain taken proper action and followed safety standards. Plaintiff's motion to supplement the administrative record was granted by the court on October 27, 2020 over LINA's opposition.

---

[1] LINA reports that it "offered Plaintiff a full Administrative Review, specifically inviting Plaintiff to submit additional information supporting her claim. Plaintiff provided LINA with nothing other than a letter from her counsel." (Doc. 77-1 at 5.) Plaintiff does not dispute these representations.

While the motion to supplement the administrative record was pending, LINA filed a motion for summary judgment. After briefing and oral argument, the court denied LINA's motion for summary judgment on March 26, 2021, finding there were contested issues of fact regarding what caused the snowcat's rollover and Mr. DeGreenia's death.

The court scheduled a bench trial for June 30, 2021. On June 10, 2021, LINA informed Plaintiff's counsel that LINA had decided to pay the full accidental death benefit at issue.[2] On June 18, 2021, LINA sent Plaintiff checks for $340,000, the full accidental death benefit payable, and $60,264.48, interest on the benefit amount at six percent from the date of Mr. DeGreenia's death to the date of payment.

In a motion *in limine* filed on June 18, 2021, LINA argued Plaintiff's Amended Complaint was moot because LINA had provided Plaintiff with all the relief to which she was entitled under the Plan. LINA contended there should be no trial. Plaintiff opposed the motion *in limine*, arguing that the case was not moot because the court still needed to resolve the issues of prejudgment interest and attorney's fees.

At the bench trial, the court retained jurisdiction to grant relief in the form of prejudgment interest and attorney's fees, even if the issue of whether the accidental death benefits were improperly denied was mooted by payment of the benefits in full. On July 21, 2021, Plaintiff filed motions for attorney's fees (Doc. 71), interest (Doc. 72), and costs (Doc. 73). On August 11, 2021, LINA opposed Plaintiff's motions.

As of July 21, 2021, Plaintiff's counsel had expended 926.4 hours on this case. Attorney Hanley spent 12.7 hours at the hourly rate of $400.00 and 388.3 hours at the rate of $450.00. Attorney Perkins spent 56.3 hours at the rate of $350.00 and 469.1 hours at the rate of $400.00. Plaintiff seeks an attorney's fee award of $387,160.00 with a 1.181 multiplier for a total fee award of $457,235.96, costs and expenses totaling $12,139.39, as well as an award of prejudgment interest at a rate of twelve percent.

---

[2] LINA's counsel claims he told Plaintiff's counsel on June 10, 2021 that LINA would pay prejudgment interest. (Doc. 61 at 9.) Plaintiff's counsel claims LINA's counsel did not indicate whether LINA would pay interest. (Doc. 65 at 3.) The court finds this dispute immaterial because LINA agreed to pay the full benefits plus interest in a June 15, 2021 email. (Doc. 65-1.)

## II.    Conclusions of Law and Analysis.

### A.    Whether Plaintiff Is Entitled to An Award of Prejudgment Interest.

"District Court[s] enjoy[] broad discretion to decide whether to award prejudgment interest in [ERISA] case[s.]" *Frommert v. Conkright*, 913 F.3d 101, 109 (2d Cir. 2019) (citing *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996)); *see also Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 53 (2d Cir. 2009) ("We have interpreted ERISA as authorizing the district court to award prejudgment interest to a successful ERISA claimant[.]"). District courts in the Second Circuit have awarded prejudgment interest in cases in which a "[p]laintiff never won a judgment; instead, [a d]efendant decided on its own to pay [p]laintiff benefits." *Barrett v. Hartford Life & Accident Ins. Co.*, 2012 WL 6929143, at *2 (S.D.N.Y. Nov. 9, 2012); *see also Dimopoulou v. First Unum Life Ins. Co.*, 2021 WL 406741, at *5 (S.D.N.Y. Feb. 5, 2021); *Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530, 537-38 (S.D.N.Y. 2011). The Second Circuit has upheld an award of prejudgment interest under ERISA "where benefits [were] awarded after internal administrative review and not through litigation." *Dunnigan v. Metro. Life Ins. Co.*, 277 F.3d 223, 225 (2d Cir. 2002); *see also Barrett*, 2012 WL 6929143, at *2 (holding *Dunnigan* "implicitly rejected" the argument that a judgment is necessary to award prejudgment interest in ERISA cases). The court may thus award prejudgment interest in this case even though it has neither rendered a decision on the merits nor entered judgment in Plaintiff's favor.

As the Second Circuit has observed, there is no provision of ERISA or "federal statute that purports to control the rate of prejudgment interest." *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000). LINA has already paid six percent interest on the accidental death benefits it issued to Plaintiff. Plaintiff argues that the following Vermont statute regulates the timing and payment of life insurance benefits and is not preempted by ERISA:

> (b) A claim for payment of benefits under a policy of life insurance shall be paid within 30 days after the date that a properly executed proof of loss is received by the insurer. All payments of claims under policies of life insurance shall include interest accrued from the date of death of the

4

insured to the date of payment. The interest rate shall be the rate paid on proceeds left on deposit or six percent, whichever is greater.

. . .

(d) If a claim is contested, it shall be paid within 30 days after the entry of a final nonappealable judgment against the insurer; the entry of a binding arbitration decision between the insurer, the beneficiary, and the Department, as applicable; or the execution of a settlement agreement between the insurer, the beneficiary, and the Department, as applicable.

(e) If an insurer fails to pay a claim within the applicable time period set forth in subsection (b), (c), or (d) of this section, it shall thereafter pay interest on the amount of the claim at the judgment rate allowed by law. Interest shall accrue from 30 days after the date the insurer receives a properly executed proof of loss.

8 V.S.A. § 3665b.

Plaintiff contends § 3665b(e) applies because LINA failed to pay the claim within thirty days of Plaintiff submitting a proof of loss and therefore LINA should be required to pay prejudgment interest at the Vermont judgment rate of twelve percent. Even if the court finds § 3665b is preempted by ERISA or does not control, Plaintiff requests the court use its discretion to award twelve percent interest.

LINA counters that § 3665b is preempted by ERISA[3] and that an award of prejudgment interest is not appropriate because LINA disputed coverage in good faith. If the court decides prejudgment interest should be awarded, LINA urges the court to use the federal post-judgment interest rate under 28 U.S.C. § 1961. If 8 V.S.A. § 3665b controls, LINA argues that its payment of the Plan benefits with six percent interest was timely under § 3665b(d) or, alternatively, that the applicable judgment rate under § 3665b(e) in this case is not twelve percent but the rate set by 28 U.S.C. § 1961.

Federal courts may award prejudgment interest on an ERISA claim as a matter of federal common law. *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir. 1998). "[F]ederal courts need not incorporate state law as the federal common law rule for the applicable prejudgment interest rate [under ERISA] . . . [and] the determination of the

---

[3] As Plaintiff points out, LINA initially agreed § 3665b controlled its payment of interest. (Doc. 72-1 at 5.)

5

prejudgment interest rate [is] within the sound discretion of the district court." *Id.*
Because 8 V.S.A. § 3665b does not control the prejudgment interest rate in ERISA cases,
the court declines to address whether § 3665b is preempted by ERISA.

The rate of prejudgment interest in ERISA cases "will depend on the
circumstances of the individual case[.]" *Jones*, 223 F.3d at 139. In exercising its
discretion to award prejudgment interest and determining an appropriate rate, the court
must take into account "(i) the need to fully compensate the wronged party for actual
damages suffered, (ii) considerations of fairness and the relative equities of the award,
(iii) the remedial purpose of the statute involved, and/or (iv) such other general principles
as are deemed relevant by the court." *Id.* (quoting *First Jersey Sec., Inc.*, 101 F.3d at
1476).

In this case, prejudgment interest will fully compensate Plaintiff for the lengthy
delay resulting from LINA's denial of benefits even if LINA acted in good faith.
Although Plaintiff contributed to that delay by seeking to supplement the record with pre-
existing VOSHA records several months after the action was filed, because the remedial
purpose of ERISA is to protect plan beneficiaries, an award of prejudgment interest
remains appropriate. *See Slupinski*, 554 F.3d at 47 ("The central purpose of ERISA is to
protect beneficiaries of employee benefit plans, and private actions by beneficiaries
seeking in good faith to secure their rights under employee benefit plans are important
mechanisms for furthering ERISA's remedial purpose[.]") (internal quotation marks and
citations omitted).

In determining an interest rate that is "fair, equitable and necessary to compensate
the wronged party fully[,]" *Wickham Contracting Co. v. Loc. Union No. 3, IBEW*, 955
F.2d 831, 835 (2d Cir. 1992), relevant rates to consider include the federal post-judgment
interest rate under 28 U.S.C. § 1961, borrowing rates, investment return rates, and,
though not controlling, state law prejudgment interest rates. *Jones*, 223 F.3d at 139-40.
"[T]he aim . . . is to make the plaintiffs whole, but not to give them a windfall." *Algie v.
RCA Glob. Commc'ns., Inc.*, 891 F. Supp. 875, 899 (S.D.N.Y. 1994).

6

The federal post-judgment interest rate proposed by LINA is linked to "the weekly average 1-year constant maturity Treasury yield," 28 U.S.C. § 1961, which "has varied over the years, but historically i[t] has been relatively low." *Frommert v. Becker*, 216 F. Supp. 3d 309, 315 (W.D.N.Y. 2016). As of October 22, 2021, the rate stood at 0.13%.[4] That rate is too low to make Plaintiff whole. *See Frommert*, 216 F. Supp. 3d at 315-16 ("A plaintiff who was wrongfully deprived of funds for a period of time, but who wanted or needed to make a major purchase, might have been forced to borrow money at rates well above the [federal] post-judgment interest rate."); *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 686-87 (6th Cir. 2013) (finding award of prejudgment interest at rate of 0.12% under 28 U.S.C. § 1961 would allow defendants to "be rewarded for their wrongdoing").

Plaintiff's proposed rate of twelve percent, a rate meant as a penalty under 8 V.S.A. § 3665b(e), is also inappropriate for a good faith coverage dispute in a factually challenging case. The outcome here was uncertain, especially considering Plaintiff proffered no expert testimony in support of her claim that Mr. DeGreenia's use of marijuana and cocaine prior to the accident had no role in causing his death while LINA proffered two experts with contrary opinions. The court further agrees with LINA that if § 3665b is considered in determining the appropriate prejudgment interest rate, subsection d for contested claims is applicable. *Haynes v. Allstate Ins. Co.*, 749 F.2d 1474, 1476 (11th Cir. 1985) (ruling in the context of a bad faith claim, "[w]hen a claim is fairly debatable, the insurer is entitled to debate it") (internal quotation marks and citations omitted). In this case, twelve percent interest would "result in over-compensation to the [P]laintiff[.]" *Frommert*, 913 F.3d at 109; *see also Dimopoulou*, 2021 WL 406741, at *6 (holding "an award of [nine percent] interest would not be equitable and [would] represent a windfall for Plaintiff"); *Am. Underground Eng'g, Inc. v. City of Syracuse*, 2012 WL 3202853, at *5 (N.D.N.Y. Aug. 2, 2012) (same).

---

[4] *Selected Interest Rates*, Federal Reserve (Oct. 25, 2021),
https://www.federalreserve.gov/releases/h15/.

Many courts have found that the federal prime rate, a rate often used as a reference rate for small business and consumer loans, "strikes an appropriate balance, and will fairly compensate plaintiffs for the period of time during which they were improperly denied the use of the funds to which they were entitled." *Frommert*, 216 F. Supp. 3d at 316; *see also Spears v. Liberty Life Assurance Co. of Bos.*, 2020 WL 2404973, at *6 (D. Conn. May 12, 2020) (collecting ERISA cases applying the prime rate). The prime rate as of October 22, 2021 was 3.25%. *Selected Interest Rates, supra.* The court concludes that the federal prime rate is "fair, equitable[,] . . . compensate[s] the wronged party fully[,]" *Wickham Contracting Co.*, 955 F.2d at 834, and allows for national uniformity under ERISA.

Because the six percent interest already paid by LINA to Plaintiff is greater than the federal prime rate, the court finds that LINA's payment of prejudgment interest was and is adequate, reasonable, and fair, Plaintiff's motion for an additional award of prejudgment interest (Doc. 72) is therefore DENIED.

### B. Whether Plaintiff Is Entitled to an Award of Attorney's Fees and Costs Pursuant to 29 U.S.C. § 1132(g)(1).

In ERISA actions, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Plaintiff has moved for attorney's fees in the amount of $457,235.96 and, separately, for costs in the amount of $12,139.39. LINA contends Plaintiff should not be awarded any fees or costs.

"[A] fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)[.]" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). Indeed, "[a]fter *Hardt*, whether a [fees claimant] has obtained some degree of success on the merits is the sole factor that a court must consider in exercising its discretion." *Donachie v. Liberty Life Assurance Co. of Bos.*, 745 F.3d 41, 46 (2d Cir. 2014). Accordingly, "a district court must begin its § 1132(g)(1) analysis by determining whether a party has achieved 'some degree of success on the merits,' but it is not required to award fees simply because this pre-condition has been met." *Toussaint v. JJ Weiser,*

8

*Inc.*, 648 F.3d 108, 110 (2d Cir. 2011).

The Second Circuit has endorsed the "catalyst theory" as a viable way of demonstrating some degree of success on the merits. *Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 155 (2d Cir. 2013). Under that theory, a fees claimant must show "judicial action in some way spurred one party to provide another party with relief." *Id.* In *Scarangella*, the Second Circuit found that when "the parties already have received a tentative analysis of their legal claims within the context of summary judgment, a party may be able to show that the court's discussion of the pending claims resulted in the party obtaining relief." *Id.*

As LINA concedes, it chose to reconsider Plaintiff's claim and provide her with the full relief she sought only after Plaintiff's motion to supplement the administrative record with VOSHA records was granted and LINA's motion for summary judgment was denied. *See* Doc. 77-1 at 7 ("LINA's reconsideration of Plaintiff's claim—now with the benefit of VOSHA records and the Court's opinion—led it to pay the claim."). This suffices to establish that LINA's payment to Plaintiff was "in some way spurred" by judicial action. *Scarangella*, 731 F.3d at 155. Plaintiff has further demonstrated "some success on the merits[.]" *Hardt*, 560 U.S. at 255 (quoting *Ruckelshaus*, 463 U.S. at 694).

Courts in the Second Circuit generally consider the five factors set forth in *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987) in determining whether to award fees and costs under § 1132(g)(1). *See Hardt*, 560 U.S. at 255 n.8 ("We do not foreclose the possibility that once a claimant has satisfied this [some degree of success on the merits] requirement, and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors [in *Chambless*][5] in deciding whether to award attorney's fees."); *see also Donachie*, 745 F.3d at 46; *Toussaint*, 648 F.3d at 110. Those factors are:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees,

---

[5] *Hardt* was on appeal from the Fourth Circuit and approved of the five-factor test used in that Circuit, which is "substantively the same as the *Chambless* test." *Donachie v. Liberty Life Assurance Co. of Bos.*, 745 F.3d 41, 46 n.6 (2d Cir. 2014).

(3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless*, 815 F.2d at 871.

### 1.    LINA's Culpability or Bad Faith.

"[T]he concepts of 'bad faith' and 'culpability' are distinct, and either one may satisfy the first *Chambless* factor." *Donachie*, 745 F.3d at 47. Examples of bad faith include advocating "frivolous or improper arguments[,]" *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 383 (2d Cir. 2002), or presenting "deliberately false" testimony, *Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 485 (2d Cir. 2002). There is no evidence that LINA acted in bad faith; rather, it contested a complex issue of causation and, in doing so, hired two expert witnesses while Plaintiff hired none.

Culpable conduct, however, requires only conduct that is "at fault; involving the breach of a legal duty or the commission of a fault." *Slupinski*, 554 F.3d at 48 (quoting *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 299 (2d Cir. 2004)). LINA was "on notice regarding the VOSHA records" and had "'an *independent duty* to ensure that the record before it was sufficient for a fair and accurate claims determination.'"*DeGreenia-Harris v. Life Ins. Co. of N. Am.*, 2020 WL 6281573, at *4 (D. Vt. Oct. 27, 2020) (emphasis supplied) (quoting *Galuszka v. Reliance Standard Life Ins. Co.*, 2017 WL 78889, at *4 (D. Vt. Jan. 9, 2017)). It erred in not seeking out the VOSHA records.

The court must also evaluate "the *degree* of the offending party's culpability." *Chambless*, 815 F.2d at 871 (emphasis supplied). The VOSHA records "could have been made part of the record by either party[.]" *DeGreenia-Harris*, 2020 WL 6281573, at *4. Plaintiff failed to obtain them until well after her lawsuit was filed and was thus also responsible for unnecessary delay. To its credit, LINA reconsidered its position when presented with additional evidence and arguments. Considering the totality of the circumstances, LINA's degree of culpability was relatively minimal. This factor thus weighs only slightly in favor of an award of attorney's fees.

### 2.    LINA's Ability to Satisfy an Award.

The parties agree LINA has the ability to satisfy an award. This factor, in the context of this case, is neutral. *See Lauder*, 284 F.3d at 383 (describing large insurance company's ability to satisfy award "unremarkable, and therefore neutral").

### 3.    Deterrence of Others in Like Circumstances.

Plaintiff asserts that an award of attorney's fees would encourage other insurers and claim administrators to analyze illegal substance use in relation to claims more carefully. LINA argues that disputing a debatable claim based on undisputed evidence of use of illegal substances by an employee prior to operating heavy machinery on a slippery incline is not bad conduct that needs to be deterred. Although Plaintiff asserts that the treatment of substance abuse was clear cut under applicable precedent, this court concluded otherwise.

While LINA ultimately decided to forgo trial, it relied on a reasonable and good faith dispute regarding causation. Attorney's fees thus would serve no deterrent purpose as "it is unlikely that such an award would deter others from similar conduct since the defendant had a colorable defense to the plaintiff's cause of action[.]" *Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 210 (2d Cir. 2003). This factor weighs against an award of fees.

### 4.    Relative Merits of the Parties' Positions.

The court has not rendered any decision on the merits. While Plaintiff obtained the relief she sought, LINA's position "can hardly be deemed to be so disproportionately meritless as to justify the imposition of an award of attorneys' fees[.]" *Gibbs v. Gibbs*, 210 F.3d 491, 505 (5th Cir. 2000). On the other hand, the VOSHA investigation clearly found that factors other than Mr. DeGreenia's substance abuse caused the rollover. VOSHA ultimately penalized Mr. DeGreenia's employer for failure to comply with safety standards. Other than Mr. DeGreenia's illegal substance use, LINA's experts "d[id] not address the absence of evidence that Mr. DeGreenia was operating the snowcat in an unusual or reckless manner." *DeGreenia-Harris*, 2021 WL 1165502, at *11. As between Plaintiff and LINA, Plaintiff had the more meritorious position. This factor

11

weighs in favor of an award of fees.

### 5.   Common Benefit on Plan Participants.

This is not a case in which a common benefit has been conferred on all participants and beneficiaries of the Plan, *see Locher*, 389 F.3d at 299, or which resolved a significant legal question regarding ERISA itself. *See Hardt*, 560 U.S. at 249 n.1. However, "failure to satisfy the fifth *Chambless* factor does not preclude an award of attorneys' fees." *Locher*, 389 F.3d at 299. Plaintiff's argument that the Plan participants will benefit because LINA will decide accidental death claims more carefully in the future is not a common benefit. *See id.* (noting Second Circuit has never recognized exposing questionable practices and providing "an opportunity to increase knowledge and improve procedures in a way that may ultimately benefit others" as satisfying this factor); *Slupinski*, 554 F.3d at 48 (finding no common benefit where fees claimant "has not pointed to any common benefit beyond the deterrent effect that is taken into account in the third *Chambless* factor"). Therefore, this factor is neutral.

The first and fourth *Chambless* factors weigh in favor of an award, the third factor weighs against an award, and the second and fifth factors are neutral. "[P]rivate actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose[.]" *Slupinski*, 554 F.3d at 47 (quoting *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000)). "Congress intended the fee provisions of ERISA to encourage beneficiaries to enforce their statutory rights." *Id.* In light of ERISA's remedial purpose, "granting a prevailing plaintiff's request for fees is appropriate absent 'some particular justification for not doing so.'" *Donachie*, 745 F.3d at 47 (quoting *Birmingham v. SoGen–Swiss Int'l Corp. Ret. Plan*, 718 F.2d 515, 523 (2d Cir. 1983)). There are sound public policy reasons to encourage ERISA plan administrators to reassess and pay valid claims prior to the eve of trial and an award of attorney's fees will further those public policy interests.

Considering Plaintiff's attainment of some success on the merits and all the *Chambless* factors, the court exercises its discretion to award reasonable attorney's fees and costs to Plaintiff in furtherance of "[t]he central purpose of ERISA [which] is to

protect beneficiaries of employee benefit plans." *Slupinski*, 554 F.3d at 47 (citing 29 U.S.C. § 1001(b); *Salovaara*, 222 F.3d at 31).

## C. Calculation of Reasonable Fees and Costs.

The court has discretion to award "a reasonable attorney's fee and costs of action[.]" 29 U.S.C. § 1132(g)(1). In exercising that discretion, the court "must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

"Both [the Second Circuit] and the Supreme Court have held that the lodestar[6]— the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Id.* (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). The presumption of reasonableness is "strong[,]" and the lodestar can be adjusted only in "rare and exceptional circumstances." *Perdue*, 559 U.S. at 552-53 (internal quotation marks and citations omitted). "[T]he fee applicant bears the burden of establishing entitlement to an award[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### 1. Reasonable Hourly Rate.

"The reasonable hourly rate is the rate a paying client would be willing to pay[,] bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d. at 190; *accord Perdue*, 559 U.S. at 552 ("[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case."). In determining the reasonable

---

[6] "The meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (detailing its various meanings and attempting to abandon its usage). The lodestar approach to fee awards, however, persists and reflects a reasonable hourly rate and a reasonable number of hours. *See Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). Both the product (*i.e.*, the lodestar) and the factors (*i.e.*, the reasonable rate and reasonable hours) are judicially determined. *Id.* The rates, hours, and total fee requested by Plaintiff are referred to herein as "requested rates," "requested hours," and "requested fee."

hourly rate, the court must consider case-specific variables, including:

> [T]he complexity and difficulty of the case, the available expertise and
> capacity of the client's other counsel (if any), the resources required to
> prosecute the case effectively (taking account of the resources being
> marshaled on the other side but not endorsing scorched earth tactics), the
> timing demands of the case, whether an attorney might have an interest
> (independent of that of his client) in achieving the ends of the litigation or
> might initiate the representation himself, whether an attorney might have
> initially acted pro bono (such that a client might be aware that the attorney
> expected low or non-existent remuneration), and other returns (such as
> reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184. Other relevant case-specific variables include:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the level of skill required to perform the legal service
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the attorney's customary hourly rate;
> (6) whether the fee is fixed or contingent; (7) the time limitations imposed
> by the client or the circumstances; (8) the amount involved in the case and
> the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and length of
> the professional relationship with the client; and (12) awards in similar
> cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also id.* at 190 ("In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors[.]").

Plaintiff requests an hourly rate of $400 to $450 for Attorney Hanley and $350 to $400 for Attorney Perkins. In support of this request, Plaintiff submits affidavits from Attorney Hanley and Attorney Perkins reciting their qualifications and experience. The affidavits assert that the requested rates are their "normal hourly rates" and that their firm, Plante & Hanley, P.C., "has no difficulty obtaining clients prepared to pay our hourly fees[.]" (Docs. 71-5 at 6, ¶ 22 & 71-6 at 5, ¶ 18.) While the rate an attorney charges to paying clients may be evidence of a reasonable hourly rate, it is not dispositive. *See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) ("[T]he actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'"). "[Reasonable fee] statutes

14

were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

Attorney Hanley and Attorney Perkins aver only that they have "no difficulty obtaining clients prepared to pay our hourly fees[.]" (Docs. 71-5 at 6, ¶ 22 & 71-6 at 5, ¶ 18.) They do not assert that all of their clients pay the same rate. Even if they did, it would not necessarily dictate a reasonable rate when fee shifting is requested. *See Solnin v. Sun Life & Health Ins. Co.*, 776 F. App'x 731, 732 (2d Cir. 2019) ("In an affirmation, counsel states that his $720-per-hour billing rate is paid by his clients with litigation in the Eastern District. Counsel supplies no particularized evidence of such collections. In any event, he fails to show that the hourly rates charged by his firm are the prevailing Eastern District []rates for litigating ERISA claims."). In addition, the requested rates were never agreed to by Plaintiff, who is represented pursuant to a contingency fee agreement. (Doc. 71-5 at 5, ¶ 15.) Assuming a contingency fee of one-third of total recovery, Plaintiff's attorneys expected a total fee of approximately $113,333.33. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723 (1987) ("The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." (quoting *Johnson*, 488 F.2d at 718)). They now request $457,235.96, more than four times that amount.

In cases in which fees can be recovered from the opposing party, a plaintiff "has little incentive to negotiate a rate structure with his attorney prior to the litigation." *Arbor Hill*, 522 F.3d at 184.

> [T]he district court must act later to ensure that the attorney does not recoup fees that the market would not otherwise bear. Indeed, the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively.

*Id.*

15

Plaintiff submits an expert witness report prepared by Robert B. Hemley, Esq.,[7] who opines that Attorney Hanley's and Attorney Perkins's requested rates "are at the higher range for experienced trial counsel in complex cases in Vermont, but are not the highest." (Doc. 71-8 at 8.) The court agrees with Attorney Hemley that the requested rates are on the high end of what the Vermont market will bear and are reserved for cases with complex issues. The issues in this case were factually complex, but Plaintiff nonetheless decided to forgo an expert witness regarding causation and performed only limited discovery. "[T]he nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate. These factors may justify compensating an attorney at a rate lower than his or her customary rate for a different type of practice[.]" *Arbor Hill*, 522 F.3d at 184 n.2 (citations omitted); *see also id.* at 192 ("Sometimes, legal markets may be defined by practice area.").

ERISA litigation is a distinct practice area that involves bench trials, limited or no discovery, and often difficult issues of preemption and interpretation. In this case, the most challenging issues were factual. Plaintiff's counsel claims no prior experience litigating ERISA cases, although they provided competent and successful representation in this case. While questions regarding causation were difficult and unresolved, the salient factual issues were identified by the time Attorney Hanley and Attorney Perkins took over the case from Plaintiff's prior counsel. VOSHA, in turn, performed the bulk of the investigative work. For this case, a cost-conscious, rate-paying client would not necessarily seek out the most expensive trial lawyers in Vermont, but rather would hire a competent lawyer with knowledge of ERISA benefits litigation.

The court also considers the fees charged by LINA's counsel, which from $220 to $295. Plaintiff agrees that the court should consider these rates in determining an appropriate fee award. *See* Doc. 71-1 at 8 (citing *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989) ("There may be instances when district courts will want to consider—among the myriad of other factors—the fees charged by

---

[7] As LINA points out, Attorney Hemley professes no expertise or substantive experience in litigating ERISA cases.

opposing counsel.") (citation omitted)). The higher rate of $295 was charged by Attorney Magratten who is the editor of the ABA's *ERISA Survey of Federal Circuits*, has appeared in over 200 ERISA benefits cases, and has been practicing ERISA benefits litigation for approximately thirty-four years. The court finds that LINA's rates are consistent with the hourly rates charged by comparable lawyers in Vermont. *See Miele v. New York State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987) (holding district judges may "rely in part on the judge's own knowledge of private firm hourly rates in the community"). Case law also supports rates between $220 and $295.[8]

As the Second Circuit has observed, "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014) (internal quotation marks and citation omitted). As a result, hourly rates "at the higher range for experienced trial counsel in complex cases in Vermont," (Doc. 71-8 at 8), do not provide an accurate "rate a paying client would be willing to pay, . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

Considering the nature and complexity of the case, the experience of counsel,

---

[8] *See Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Coop. Funds v. Sabre Tile Corp.*, 2021 WL 2742745, at *3 (E.D.N.Y. June 1, 2021), *report and recommendation adopted sub nom. Trs. of Ne. Carpenters Health, Penson, Annuity, Apprenticeship, & Lab. Mgmt. Coop. Funds v. Sabre Tile Corp.*, 2021 WL 2741648 (E.D.N.Y. July 1, 2021) ("As for reasonable hourly rates in comparable cases, this District has awarded $225-275 for associates in ERISA cases, and $200-350 for partners.") (citations omitted) (collecting cases); *Bricklayers & Allied Craftworkers Loc. 2 v. Mainstream Specialties Inc.*, 2020 WL 6781512, at *4 (N.D.N.Y. Nov. 18, 2020) (finding "courts in this district [in ERISA cases between 2011 and 2018] have regularly awarded attorney's fees at a rate of $210 for experienced attorneys" and holding "that these rates were due to be raised[:] . . . hourly rates of $240 for an experienced attorney [are] reasonable"); *Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Loc. Union No. 71 v. Lovejoy Metals, Inc.*, 495 F. Supp. 3d 174, 192 (W.D.N.Y. 2020) (awarding hourly rates of $275, $265, and $235 for attorneys with thirty-seven, twenty-nine, and six years, respectively, of ERISA litigation experience, and collected cases awarding $250 per hour). Cases cited by Attorney Hemley from the Southern District of New York awarding higher rates are not persuasive because the legal market in Manhattan differs significantly from the legal market in Vermont.

Plaintiff's counsel's customary rate, Plaintiff's fee arrangement with counsel, LINA's counsel's rate, the court's own assessment of market rates, and awards in comparable cases, the court holds the reasonable hourly rate is $275 per hour for Attorney Hanley and $225 per hour for Attorney Perkins.[9]

### 2. Reasonable Number of Hours.

"Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (internal quotation marks and citation omitted) (emphasis in original). The fees claimant is responsible for "documenting the appropriate hours expended" as well as "maintain[ing] billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* at 437. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433. "[The Second Circuit] do[es] not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).

"Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded; and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application[.]" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citations omitted).

The time and expense report submitted by Plaintiff is inadequate for the court to review the reasonableness of her attorneys' requested hours. Some entries are too vague to determine what work was performed; for example, Attorney Hanley's February 26, 2020 entry for 5.0 hours: "Conference with Mr. Perkins. Legal research. Memorandum to file." (Doc. 71-4 at 10.) "Plaintiff's counsel, of course, is not required to record in great

---

[9] The difference in the reasonable hourly rate between Attorney Hanley and Attorney Perkins reflects Attorney Hanley's twenty-two years of additional experience and supervisory role. At their claimed "normal hourly rates[,]" Attorney Perkins charges fifty dollars per hour less than Attorney Hanley. (Doc. 71-5 at 6, ¶¶ 20-21, 24.)

detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12.

The extensive use of block billing is equally problematic. Attorney Perkins's entry on June 23, 2021 for 6.7 hours of time is illustrative:

> Prepare Anna DeGreenia, Kasey DeGreenia-Harris and Kirsten DeGreenia for their trial testimony. Revise, edit and complete bench memorandum on the admissibility of Brooks Magratten's June 15, 2021 email and June 18, 2021 letter, and two checks from LINA. Legal research regarding mootness doctrine, as set forth in the U.S. Supreme Court and 2nd Circuit Court of Appeals, as it relates to a defendant's voluntary decision to pay a claim in an effort to avoid judgment. Legal research regarding "some degree of success" under ERISA case law, and the "catalyst theory" of an award of attorneys' fees. Telephone conferences with Ms. DeGreenia-Harris and Mrs. DeGreenia. Legal research of ethical opinions and case law on appropriate attorneys' fees in a case involving a contingency fee agreement and a statutory award of attorneys' fees.

(Doc. 71-4 at 50.) Without indicating the amount of time spent on discrete tasks, the court cannot determine whether the hours incurred are reasonable.

Plaintiff's time and expense report also appears to show hours that are "excessive, redundant, or otherwise unnecessary[.]" *Kirsch*, 148 F.3d at 173. For example, Attorney Hanley billed at least 6.1 identifiable hours relating to Attorney Hemley's expert report, but also block billed another 32.3 hours and Attorney Perkins block billed 16.7 hours. In preparing Plaintiff's motion for prejudgment interest after LINA had already issued a check for six percent interest, Attorney Hanley billed at least 8 hours and block billed 15 more and Attorney Perkins billed at least 2.2 hours and block billed 20 more. A total of 10.2 identifiable hours and 35 block billed hours is excessive, especially as LINA had agreed to pay prejudgment interest and the only dispute was the proper rate. Moreover, Plaintiff's motion for additional prejudgment interest was ultimately not successful. *See Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789-90 (1989) (holding that for fee awards the "most critical factor is the degree of success obtained" and courts can "simply reduc[e] the award to account for the limited success of the plaintiff") (internal quotation marks and citations omitted).

In addition, although this case was filed on or about November 25, 2019, Plaintiff's counsel seeks to recover fees from March 12, 2019 forward as well as for time incurred in administrative tasks. *See Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 120 (2d Cir. 2002) (holding "pre-litigation fees and costs are [not] authorized by ERISA"); *Doe v. Unum Life Ins. Co. of Am.*, 2016 WL 335867, at *7 (S.D.N.Y. Jan. 28, 2016), *report and recommendation adopted*, 2016 WL 749886 (S.D.N.Y. Feb. 23, 2016) ("Plaintiffs cannot recover for time spent by attorneys completing administrative tasks.") (collecting cases).

Finally, Plaintiff's counsel billed 926.4 hours in comparison to 240.7 hours billed by LINA's counsel, which suggests excessive hours that "are not properly billed to one's client" and therefore not properly billed to LINA. *Hensley*, 461 U.S. at 434 (emphasis omitted). In finding that Attorney Hanley's and Attorney Perkins's hours were reasonable, Attorney Hemley opined that he "would expect [the time spent by LINA's counsel] to be no less than the time expended by Plaintiff's counsel." (Doc. 71-8 at 6.) The court agrees. Against this backdrop, billing nearly four times the number of hours billed by LINA's counsel was unreasonable.

Because the documentation of hours submitted by Plaintiff is deficient and reflects excessive or unauthorized hours, the court finds it appropriate to apply an across-the-board 70% reduction in requested hours. *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, 2013 WL 3322249, at *8 (S.D.N.Y. July 2, 2013), *aff'd*, 679 F. App'x 33 (2d Cir. 2017) (applying 75% reduction because of "numerous hours" that were "either excessive or otherwise unreasonable" and collecting cases applying 50% to 75% reductions); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014) (upholding district court's "across-the-board 50[%] reduction based on a perceived lack of detail in the billing records"); *Mendez v. Radec Corp.*, 907 F. Supp. 2d 353, 359 (W.D.N.Y. 2012) (applying 70% reduction "based on Plaintiffs' failure to use billing judgment, the inclusion of redundant and unnecessary hours in their fee application[,] and their excessive use of block billing").

As the calculation in the following table shows, the lodestar or presumptively reasonable fee is therefore $68,547.00.

|  | Hours Request | Rate Request | Fee Request | Reasonable Hours | Reasonable Rate | Lodestar |
|---|---|---|---|---|---|---|
| Attorney Hanley | 12.7 | $400.00 | $5,080.00 | 3.81 | $275.00 | $1,047.75 |
|  | 388.3 | $450.00 | $174,735.00 | 116.49 | $275.00 | $32,034.75 |
| Attorney Perkins | 56.3 | $350.00 | $19,705.00 | 16.89 | $225.00 | $3,800.25 |
|  | 469.1 | $400.00 | $187,640.00 | 140.73 | $225.00 | $31,664.25 |
| Totals | 926.4 |  | $387,160.00 | 277.92 |  | **$68,547.00** |

### 3.  Fee Enhancement.

The lodestar is not "conclusive in all circumstances." *Millea*, 658 F.3d at 167 (quoting *Perdue*, 559 U.S. at 553). "[E]nhancements may be awarded in rare and exceptional circumstances." *Perdue*, 559 U.S. at 552 (internal quotation marks and citations omitted). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee and . . . an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Id.* at 553 (internal quotation marks and citations omitted).

"[T]he novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably are fully reflected in the number of billable hours recorded by counsel." *Id.* (internal quotation marks, alteration, and citation omitted). In addition, "the quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." *Id.* (internal quotation marks and citation omitted). A fee applicant bears the burden of proving an enhancement is necessary with "specific evidence that supports the award." *Id.* (internal quotation marks and citation omitted).

Plaintiff requests an upward adjustment by a factor of 1.181 because the case was complex and counsel provided high-quality representation which prompted LINA's payment of benefits. *Perdue* specifically rejects fee enhancements based on the complexity of a case or the quality of an attorney's performance because these are

21

already factored into the lodestar. *Id.* The court therefore declines to adjust the lodestar amount. Plaintiff's motion for attorney's fees is GRANTED in the amount $68,547.00 and DENIED as to the remaining requested fee.

### 4. Costs and Expenses.

The court has discretion to award "costs of action to either party." 29 U.S.C. § 1132(g)(1). Costs of action "are limited to expenses in 28 U.S.C. § 1821 and § 1920." *Johnson v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 527 (8th Cir. 2020). Other expenses are recoverable only as part of "a reasonable attorney's fee[,]" and generally include "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients[,]" provided the expenses are "incidental and necessary to the representation[.]" *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation marks and citations omitted); *see also Evans v. Books-A-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014) ("[R]easonable litigation expenses such as mediation, legal research, postage, and travel may be recovered under § 1132(g)(1) if it is the prevailing practice in the legal community to bill fee-paying clients separately for those expenses.").

Of the requested $12,139.39 in costs and expenses, $10,013.84 are payments to Gravel & Shea PC for the expert witness services of Attorney Hemley. District courts in the Second Circuit have held that expert witness fees, except for per diem fees allowed by 28 U.S.C. § 1821, are not "costs of action" under 29 U.S.C. § 1132(g)(1).[10] Several

---

[10] *See Levy v. Young Adult Inst., Inc.*, 2019 WL 1434271, at *4 (S.D.N.Y. Mar. 30, 2019) (limiting ERISA claimants' requested reimbursement for expert fees to the per diem allowances provided for by 28 U.S.C. § 1821); *Critchlow v. First Unum Life Ins. Co. of Am.*, 377 F. Supp. 2d 337, 349 n.5 (W.D.N.Y. 2005) ("It does appear that one of plaintiff's claimed costs, for expert witness fees, are not taxable as costs.") (citation omitted); *Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 137 F. Supp. 2d 351, 360 (S.D.N.Y. 2001), *vacated on other grounds*, 302 F.3d 18, 34-35 (2d Cir. 2002) ("As the cases have uniformly held, because [29 U.S.C. § 1132(g)] does not explicitly permit the recovery of expert witness fees, expert witness fees are not allowable in these types of cases.") (collecting cases); *Garlock v. Nelson*, 1998 WL 315089, at *1 (N.D.N.Y. June 9, 1998) ("ERISA does not specifically permit fee-shifting for expert witness fees, and therefore the limitations provided in 28 U.S.C. § 1821 are applicable.") (collecting cases).

Circuit Courts of Appeals have reached the same conclusion.[11] As the Ninth Circuit explained:

> [Plaintiff] also argues that ERISA's general "remedial" orientation militates in favor of construing section 502(g)(1) to give courts discretion to shift reasonable expert witness fees. This subsection, however, empowers a court to award costs of action "to either party." Therefore, adopting a more expansive view of a court's power to shift expert witness fees under its authority may work against plaintiffs as well as for them.

> We therefore hold that section 502(g)(1)'s allowance for "costs of action" empowers courts to award only the types of "costs" allowed by 28 U.S.C. § 1920, and only in the amounts allowed by section 1920 itself, by 28 U.S.C. § 1821 or by similar such provisions.

*Agredano v. Mut. of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996). Expert witness fees are thus not recoverable as "costs of action[.]" 29 U.S.C. § 1132(g)(1).

Nor are expert witness fees recoverable as reasonable litigation expenses under 29 U.S.C. § 1132(g)(1). While expert witness fees may be "incidental and necessary to the representation" and "normally charged fee-paying clients[,]" *Reichman*, 818 F.2d at 283 (internal quotation marks and citations omitted), Supreme Court precedent "require[s] a different rule for the reasonable litigation expense of expert witness fees" in ERISA cases. *Amara v. Cigna Corp.*, 2018 WL 6242496, at *5 (D. Conn. Nov. 29, 2018) (internal quotation marks omitted).

"[W]hen not overridden by contract or explicit statutory authority, [28 U.S.C. §§ 1920 and 1821] control a federal court's power to hold a losing party responsible for the opponent's witness fees." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987). In this case, there is no "contract or explicit statutory authority." *Id.*

In *West Virginia University Hospitals, Inc. v. Casey*, the Supreme Court addressed

---

[11] *See Johnson v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 527 (8th Cir. 2020) ("[C]osts awarded under ERISA are limited to expenses in 28 U.S.C. § 1821 and § 1920."); *Agredano v. Mut. of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996) (holding "costs of action" under 29 U.S.C. § 1132(g) does not allow recovery of expert witness fees except "to the extent allowed by 28 U.S.C. §§ 1920(3) and 1821(b)"); *Holland v. Valhi Inc.*, 22 F.3d 968, 979-80 (10th Cir. 1994) ("[A]bsent a specific statutory provision, an award of expert fees must be based on 28 U.S.C. §§ 1821 and 1920[.]").

"whether the term 'attorney's fee' in [42 U.S.C.] § 1988 provides the 'explicit statutory authority' required by *Crawford Fitting*" to allow reimbursement of expert fees. 499 U.S. 83, 87 (1991). The Supreme Court held it did not. *Id.* at 102. Congress amended 42 U.S.C. § 1988 in response to *Casey* to expressly allow recovery of expert fees. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 251 (1994). It has not, however, amended the language in 29 U.S.C. § 1132(g)(1) and expert witness fees are thus not recoverable as reasonable litigation expenses in ERISA cases. *See Holland*, 22 F.3d at 979-80 (holding that even though Congress amended 42 U.S.C. § 1988 in response to *Casey*, "expert fees are not part of 'reasonable attorney's fees' [under 29 U.S.C. § 1132(g)]") (citing *Casey*, 499 U.S. at 97-101); *Johnson*, 950 F.3d at 528 ("Some expenses that the district court awarded as 'costs' might be awarded as attorney's fees if they are separately billed under the prevailing practice in the local community. . . . However, expert witness fees are generally not part of attorney's fees [under 29 U.S.C. § 1132(g)].") (citing *Casey*, 499 U.S. at 96); *Amara*, 2018 WL 6242496, at *5 (holding expert witness fees are not recoverable as expenses under 29 U.S.C. § 1132(g)). For the foregoing reasons, the court must reject Plaintiff's request for an award of expert witness fees.

The remaining costs and expenses requested are Plaintiff's share of mediator fees; travel, meals, and lodging for one client meeting and two court hearings; costs of initiating the action and service of process; postage; and the cost of two transcripts. Other than objecting to an award of costs generally, LINA does not contest these costs and expenses, which are within the discretion of the court to award as taxable costs or part of attorney's fees. *See* 28 U.S.C. § 1920; *Evans*, 762 F.3d at 1299. The court finds the remaining costs and expenses to be reasonable, "incidental and necessary to the representation," and "normally charged [to] fee paying clients." *Reichman*, 818 F.2d at 283 (internal quotation marks and citations omitted).

For the reasons stated above, Plaintiff's motion for costs (Doc. 73) is GRANTED in the amount $2,125.55 and DENIED as to the remainder of the requested costs and expenses.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for attorney's fees (Doc. 71) is GRANTED IN PART and DENIED IN PART, Plaintiff's motion for an award of additional prejudgment interest (Doc. 72) is DENIED, and Plaintiff's motion for costs (Doc. 73) is GRANTED IN PART and DENIED IN PART. Judgment shall be entered for Plaintiff in the amount of $68,547.00 for attorney's fees and $2,125.55 for costs, for a total final judgment of $70,672.55.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 17th day of December, 2021.

Christina Reiss, District Judge
United States District Court

25